UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
SIMONE BARTHOLOMEW,

                Plaintiff,

        - against -

MOUNT SINAI WEST and MOUNT SINAI
HEALTH SYSTEM,

               Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-3854 (PKC) (JRC)

PAMELA K. CHEN, United States District Judge:

*Pro se*[1] Plaintiff Simone Bartholomew ("Plaintiff"), a former employee of Mount Sinai West and Mount Sinai Health System (together, "Defendants"), brings her Second Amended Complaint ("SAC"), alleging various claims based on Defendants' denial of Plaintiff's religious exemption request and her subsequent termination for failure to get a COVID-19 vaccine (the "Vaccine") in accordance with New York State law. (*See generally* SAC, Dkt. 29.) These allegations include violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.* ("RFRA"); 42 U.S.C. § 1985(3); the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"); New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296; New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101; New York Penal Law § 135.60[2]; and common law and statutory privacy claims. (SAC, Dkt. 29, ¶¶ 1–7; Pl.'s MTD Resp., Dkt. 34, at 11.) Currently pending before the Court is Defendants' motion to dismiss ("MTD") Plaintiff's

---

[1] Plaintiff is also proceeding *in forma pauperis* ("IFP"). (Order Granting IFP, Dkt. 4.)

[2] In Plaintiff's SAC, she listed New York Penal Law § 135.61. (SAC, Dkt. 29, ¶ 6.) However, Plaintiff subsequently corrected this to § 135.60. (Pl.'s MTD Resp., Dkt. 34, at 11.)

SAC with prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (MTD, Dkt. 35.) For the following reasons, the Court grants Defendants' MTD and dismisses this action pursuant to Rule 12(b)(6). The Court also denies as unnecessary Plaintiff's request for oral argument on her SAC. (Dkt. 33.)

## BACKGROUND

**I.    Factual Background[3]**

**A.    Plaintiff's Employment History with Defendants**

Plaintiff was previously employed by Defendants for over 18 years across a multitude of positions, the last of which was Ambulatory Care Services Representative. (SAC, Dkt. 29, ¶¶ 13, 18.) Plaintiff alleges that, throughout her time working for Defendants, she "faced disparate treatment and was not promoted." (Pl.'s MTD Resp., Dkt. 34, at 1; *see* Ex. 3, Dkt. 29, at ECF[4] 54 (attaching screenshot of email from union representative noting that Plaintiff "has applied for numerous positions and has been denied the opportunity to work").) She further claims that she was improperly "written up for calling out sick from work, despite having sufficient leave and legitimate reasons for her absence," and that by 2018, she "sought representation when the Defendants failed to return her to work after her sick leave." (Pl.'s MTD Resp., Dkt. 34, at 4.)

---

[3] "In deciding a Rule 12(b)(6) motion" a court may properly consider, *inter alia*, "the facts alleged in the pleadings, [as well as] documents attached as exhibits or incorporated by reference in the pleadings." *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (internal quotation marks and citation omitted). In addition, "because of the liberal construction afforded to *pro se* papers, '[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in [her] papers opposing the motion.'" *Moss v. Bd. of Educ. of Brentwood Sch. Dist.*, No. 23-CV-6571 (JS) (SIL), 2025 WL 1548945, at *6 (E.D.N.Y. May 30, 2025) (quoting *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)).

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination. Plaintiff attached a number of exhibits to her SAC, all of which were filed within the same filing, (Dkt. 29). The Court refers to the exhibits based on Plaintiff's naming convention, even if this name is not reflected in the docket number.

Finally, she alleges that she was placed in an uncomfortably cold room with conditions that exacerbated her disability, and that her requests to adjust these conditions were met with annoyance and delay.  (Pl.'s MTD Resp., Dkt. 34, at 6.)

### B.    New York's COVID-19 Vaccination Mandate

In August 2021, "New York's Department of Health adopted an emergency rule directing hospitals, nursing homes, hospices, adult care facilities, and other identified healthcare entities to 'continuously require' certain of their employees to be fully vaccinated against COVID-19."  *We The Patriots USA, Inc. v. Hochul ("We The Patriots I")*, 17 F.4th 266, 274 (2d Cir.) (per curiam) (citing N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 10, § 2.61 (2021)), *clarified*, 17 F.4th 368 (2d Cir. 2021), *cert. denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022)[5].  That rule ("the Mandate") applied to "covered personnel," i.e., "those employees, staff members, and volunteers 'who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients[,] or residents to the disease.'"  *Id.* (quoting N.Y.C.R.R. tit. 10, § 2.61(a)(2)).  The Mandate took effect on September 27, 2021 for "general hospitals" and nursing homes.  *Id.*

Also in August 2021, Defendants implemented their mandatory COVID-19 vaccination policy for employees.  (SAC, Dkt. 29, ¶ 20.)  Plaintiff alleges that her "sincerely held religious beliefs prohibit participation in medical interventions involving aborted fetal cells, including COVID-19 vaccines[.]"  (*Id.* ¶ 19.)  In September 2021, Plaintiff requested an accommodation to work from home, which was denied.  (*Id.* ¶ 23.)  Plaintiff also requested an "accommodation of

---

[5] The Court takes judicial notice of facts in the public record regarding COVID data, executive orders, and regulations, particularly since Plaintiff has not objected to Defendants' reliance on the same in its MTD.  *See Algarin v. N.Y.C. Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 502 n.4 (S.D.N.Y. 2023), *aff'd*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024).

regular saliva testing at her own expense," which was granted and paid for by Defendants.  (*Id.* ¶¶ 24–25.)  However, Defendants subsequently "revoked the saliva testing accommodation."  (*Id.* ¶ 26.)  Plaintiff also requested religious and medical exemptions, both of which were denied between September and November 2021.  (*Id.* ¶¶ 21–22, ECF 31.)  Because Plaintiff interacted with patients, (*see id.* ¶ 13), Defendants notified Plaintiff that she would have to get the Vaccine or face termination.  (*id.* ¶ 50.)  After Plaintiff refused to get the Vaccine, Defendants terminated her in December 2021.[6]  (*Id.* ¶¶ 18, 29.)

### C.    Plaintiff's Employment Claim

Plaintiff filed an initial complaint for religious discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 29, 2021, the day she received Defendants' denial of her request for a religious exemption.  (*Id.* ¶¶ 27–28.)  On May 3, 2022, the EEOC "officially file[d] Plaintiff's charge."  (*Id.* ¶ 30.)  Plaintiff alleges that on September 21, 2022, the EEOC "agreed with Plaintiff's complaint pending award."  (*Id.* ¶ 53.)  Plaintiff then alleges that, on October 18, 2022, the EEOC "changed their mind after speaking with Defendants."  (*Id.* ¶ 54.)  Plaintiff "asked [the] EEOC for an appeal[] but was strategically ignored."  (*Id.* ¶ 55.)  Finally, Plaintiff alleges that as part of the EEOC investigation, Defendants shared Plaintiff's file, which included personal health information, with the EEOC and without Plaintiff's authorization, and furthermore engaged in "obstruction of justice."  (*Id.* ¶¶ 56–59.)  Plaintiff received her right-to-sue letter from the EEOC on February 23, 2023.  (*Id.* ¶ 16.)

---

[6] On December 14, 2021, Defendants notified Plaintiff of her termination, which was effective December 30, 2021.  (SAC, Dkt. 29, ¶ 18.)

## II.    Procedural Background

Plaintiff filed her Complaint in this district on May 23, 2023.  (Compl., Dkt. 1.)  She filed her first Amended Complaint on July 26, 2023.  (Am. Compl., Dkt. 7.)  Defendants filed a first MTD, which was fully briefed on November 20, 2023.  (*See* Dkts. 19–22.)  On September 17, 2024, the Court granted Defendants' first MTD and dismissed Plaintiff's Amended Complaint with leave to refile.  (Mem. & Order ("M&O") Dismissing Am. Compl., Dkt. 23.)  On December 9, 2024, Plaintiff filed her SAC.  (SAC, Dkt. 29.)  On March 19, 2025, Defendants filed the pending MTD, which was fully briefed on May 8, 2025, including a sur-reply by Plaintiff as allowed by the Court.  (Dkts. 35–37, 44.)

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Tyler v. City of Kingston*, 74 F.4th 57, 61 (2d Cir. 2023).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Pleadings submitted by *pro se* plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citation omitted).  The Court is required to read a *pro se* plaintiff's complaint liberally and interpret it as raising the strongest arguments it suggests.  *McLeod v. Jewish Guild*

*for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (citation omitted).  But even under this liberal standard, a court "cannot invent factual allegations that [the *pro se* plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## DISCUSSION

### I.    Religious Discrimination under Title VII

#### A.    Failure to Accommodate

Plaintiff alleges that Defendants violated Title VII by "failing to continue to reasonably accommodate Plaintiff's religious convictions, beliefs, morals, and practices."  (SAC, Dkt. 29, ¶ 36.)  In support, Plaintiff lists the accommodations she had proposed, all of which Defendants eventually denied.  (*Id.* ¶¶ 23–24, 31, 38–43.)  Defendants counter that Plaintiff has failed to allege the essential elements of a claim under Title VII because the accommodations sought by Plaintiff were contrary to New York law or otherwise imposed undue hardship on Defendants.  (Defs.' Mem. Supp. MTD, Dkt. 36, at 8–9.)  The Court agrees with Defendants.

"Title VII makes it unlawful for employers 'to discharge . . . or otherwise to discriminate against any individual' in his or her employment 'because of such individual's . . . religion.'" *We The Patriots I*, 17 F.4th at 291 (quoting 42 U.S.C. § 2000e-2(a)(1)).  In order to plead a *prima facie* case of discrimination under Title VII for failure to grant a religious accommodation, a plaintiff "must plausibly allege that '(1) [she] held a bona fide religious belief conflicting with an employment requirement; (2) [she] informed [the] employers of this belief; and (3) [she was] disciplined for failure to comply with the conflicting employment requirement." *D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023) (summary order) (quoting *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)).  "Once a *prima facie* case is established by the employee, the employer must offer him or her a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Hale v.*

*Vidal*, No. 22-2973, 2023 WL 7211909, at *2 (2d Cir. Nov. 2, 2023) (summary order) (quoting *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006)); *see D'Cunha*, 2023 WL 7986441, at *2 ("An employer does not violate Title VII . . . if it can show that the prospective accommodation 'would cause the employer to suffer an undue hardship.'" (quoting *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002))). "[A]n accommodation that would require an employer to violate the law imposes an undue hardship." *Braccia v. Northwell Health Sys.*, No. 24-CV-2665, 2025 WL 2610704, at *3 (2d Cir. Sep. 10, 2025) (quoting *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 186 (2d Cir. 2025) (per curiam)).

Because "Title VII cannot be used to require employers to break the law," *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929 (CS), 2023 WL 3467143, at *5 (S.D.N.Y. May 15, 2023) (collecting cases), where the plaintiff's job required her to "engage in activities such that if [she] [were] infected with COVID-19, [she] could potentially expose other covered personnel, patients[,] or residents to the disease," N.Y.C.R.R. tit. 10, § 2.61(a)(2), courts have found vaccine exemption requests to constitute undue hardship as a matter of law. *See D'Cunha*, 2023 WL 7986441, at *2–3 (affirming dismissal of Title VII claim as requested accommodation would have posed an undue hardship because it would have required the hospital to violate the Mandate); *St. Hillaire v. Montefiore Med. Ctr.*, No. 23-CV-4763 (PMH), 2024 WL 167337, at *4 (S.D.N.Y. Jan. 16, 2024) ("Defendant could not have accommodated [p]laintiff's request because [p]laintiff . . . was a person covered by [the Mandate].  Had [d]efendant granted [p]laintiff's request for an exemption, it would have been in direct violation of New York State law, thus suffering an undue hardship."); *Algarin*, 678 F. Supp. 3d at 509–10 (finding that granting plaintiff a religious exemption from the vaccination requirement would result in undue hardship to defendant-employer because it would cause defendant-employer to

violate the Mandate and collecting cases); *Riley v. N.Y.C. Health and Hosps. Corp.*, No. 22-CV-2736 (JGK), 2023 WL 2118073, at *4 (S.D.N.Y. Feb. 17, 2023) (dismissing plaintiff's religion-based failure-to-accommodate claim because "Title VII cannot be used to require employers to break the law").

This case is no different.  The Court need not analyze whether Plaintiff has stated a *prima facia* case because the accommodation Plaintiff requested, i.e., not being vaccinated, would have caused Defendants undue hardship as a matter of law and thus cannot be used to support a Title VII religious discrimination claim.  As healthcare providers, Defendants could not allow Plaintiff to remain unvaccinated without violating the Mandate.  *See* N.Y.C.R.R. tit. 10, § 2.61(a)(1), (c) (requiring healthcare providers to "continuously require personnel to be fully vaccinated against COVID-19").[7]  By virtue of her job duties, Plaintiff was included in the "covered personnel" required to get the Vaccine under the Mandate.  *Id.* § 2.61(a); (*see* Defs.' Mem. Supp. MTD, Dkt. 36, at 2 (Plaintiff's duties "required her to register patients, interview new patients to obtain demographic, insurance, and payment information, collect co-payments from patients, provide patients with metro cards when applicable, and monitor patient flow in waiting rooms.")). Therefore, any accommodation that entailed Plaintiff remaining unvaccinated would have violated New York law, which would have been an undue hardship on Defendants as a matter of law.  *See Bracchia*, 2025 WL 2610704, at *3 (concluding, "as we did in . . . previous decisions," that the employer was not obligated to accommodate employee's religious objection to being vaccinated because "doing so would constitute an undue hardship," i.e., requiring the employer to violate the Mandate (citing *D'Cunha*, 2023 WL 7986441, at *3)).

---

[7] Notably, the Mandate only allows a medical exception.  N.Y.C.R.R. tit. 10, § 2.61(d)(1).

Plaintiff argues that Defendants could have assigned her a role that would have removed her from the definition of "covered personnel," such that she would not have been subject to the Mandate's vaccination requirement.  (*See* Pl.'s MTD Resp., Dkt. 34, at 5 ("Defendants had a clear obligation to explore all reasonable accommodation options to allow her to work remotely via lateral transfers, temporary reassignments, or workload restructuring, unless these adjustments would impose undue hardship.").)  But, although the Mandate permitted accommodations, *see We The Patriots USA, Inc. v. Hochul*, 17 F.4th 368, 370 (2d Cir. 2021) (noting that, under the Mandate, employers could "*accommodate*—not *exempt*—employees with religious objections[] by employing them in a manner that removes them from the Rule's definition of 'personnel'" (citation omitted)), "Title VII does not require covered entities to provide the accommodation that [p]laintiffs prefer."  *Smith v. NYS OMH S. Beach Psychiatric Ctr.*, No. 23-CV-4401 (PKC) (LB), 2024 WL 730492, at *3 (E.D.N.Y. Feb. 22, 2024) (finding the requested accommodations would have "clearly caused [d]efendant undue hardship") (quoting *We The Patriots I*, 17 F4th at 292); *see Groff v. DeJoy*, 600 U.S. 447, 472 (2023) ("an accommodation's effect on co-workers may have ramifications for the conduct of the employer's business" such that it constitutes undue burden); *cf. Clark v. Coca-Cola Beverages Ne., Inc.*, No. 20-CV-4040, 2022 WL 92060, at *2–3 (2d Cir. Jan. 10, 2022) (in ADA context, employer was not required to reallocate tasks from an employee to other team members because these are not considered reasonable accommodations); *Clarke v. White Plains Hosp.*, 650 F. App'x 73, 75 (2d Cir. 2016) (summary order) (in ADA context, employer is not "required to create a new position to accommodate" an employee).  Nor does Title VII require employers to fashion accommodations that employees do not request.  *See Wilson v. Mid-Hudson Forensic Psychiatric Ctr.*, No. 23-CV-8911 (CS), 2025 WL 1295655, at *7 (S.D.N.Y. May 5, 2025) (noting that "[p]laintiff cannot bring a failure to accommodate claim

based on an accommodation she never actually requested"); *St. Hillaire*, 2024 WL 167337, at *3 (noting that plaintiff "[did] not allege that she ever requested an accommodation that would have removed her from the scope of [the Mandate]," and therefore the availability of such an accommodation was irrelevant to the court's analysis). Here, nothing in Plaintiff's pleadings indicates that she requested an accommodation that would remove her from the definition of "covered personnel" during the relevant period of time.

Thus, as the Court previously found, Defendants could not have accommodated Plaintiff's request not to get vaccinated without breaking the law and thereby suffering an undue hardship. (*See* M&O Dismissing Am. Compl., Dkt. 23, at 5–6.) Plaintiff's Title VII failure-to-accommodate claim fails.

## B.  Discrimination

Plaintiff has not explicitly alleged a Title VII discrimination claim based on her religious beliefs, but to the extent her papers suggest one, (*see* Pl.'s MTD Sur-reply, Dkt. 44, at 2–3), the Court also dismisses this claim.

For a Title VII discrimination claim to survive a motion to dismiss, absent direct evidence of discrimination, the plaintiff must plausibly set forth facts to allege "(1) that she 'is a member of a protected class,'[8] (2) that she 'was qualified' for her position, (3) that she 'suffered an adverse employment action,' and (4) facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Greene v. Northwell Health Inc.*, No. 2:23-CV-4846 (NJC) (LGD), 2024 WL 4287875, at *10 (E.D.N.Y. Sep. 25, 2024) (citing *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023)). To be qualified for a position under Title VII,

---

[8] The Court assumes that Plaintiff's protected class is based on her religion or religious beliefs, which allegedly "prohibit[s] participation in medical interventions involving aborted fetal cells, including COVID-19 vaccines[.]" (SAC, Dkt. 29, ¶ 19.)

an employee must satisfy "the criteria the employer has specified for the position."  *Scé v. City of New York*, No. 20-CV-3954, 2022 WL 598974, at *1 (2d Cir. Mar. 1, 2022) (citing *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 127 (2d Cir. 2004), *abrogated on other grounds in Muldrow v. City of St. Louis*, 601 U.S. 346 (2024)).

After August 2021, receiving the Vaccine was a requirement for Plaintiff's position as an Ambulatory Care Services Representative.  (Def. Mem. Supp. MTD, Dkt., 36, at 6 ("In or around August 2021, [Defendants] implemented vaccination policies to comply with New York State law . . . imposing a mandatory COVID-19 vaccination on faculty and staff . . ."); *see We The Patriots I*, 17 F.4th at 294 (finding that "[v]accination is a condition of employment in the healthcare field").  Once Plaintiff refused to be vaccinated, she was no longer qualified for her position as a patient-facing Ambulatory Care Services Representative.  (*See* SAC, Dkt. 29, ¶ 18); *see also Brown v. S. Shore Univ. Hosp.*, 762 F. Supp. 3d 191, 207 (E.D.N.Y. 2025) (noting that "where a hospital imposed a COVID-19 vaccination requirement as an employment requirement and an employee failed to comply with that requirement, the employee was not qualified for their position for purposes of bringing a Title VII employment discrimination claim" and collecting cases).  Any discrimination claim under Title VII therefore also fails.

## C.    Retaliation

Plaintiff also cursorily suggests that Defendants retaliated against her for "engag[ing] in protect[ed] activity."  (SAC, Dkt. 29, ¶ 46.)  "Title VII . . . prohibit[s] retaliation against an employee alleging discrimination, making it unlawful for any employer to retaliate against an employee because [she] has 'made a charge, testified, assisted, or participated in any manner in any investigation, proceeding or hearing under' 42 U.S.C. § 2000e-3."  *O'Brien v. City of New York, Dep't of Educ.*, 686 F. Supp. 3d 221, 235 (E.D.N.Y. 2023).  "To state a Title VII retaliation

claim, Plaintiff must plausibly allege that '(1) [Defendants] discriminated—or took an adverse employment action—against [her], (2) because [she] has opposed any unlawful employment practice.'" *Vasquez v. City of New York - Off. of Mayor*, No. 22-CV-5068 (HG) (VMS), 2024 WL 1348702, at *9 (E.D.N.Y. Mar. 30, 2024) (quoting *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)), *recon. denied*, 2024 WL 1886656 (E.D.N.Y. Apr. 30, 2024). To establish the requisite causation, Plaintiff "must plausibly plead a connection between the [employment] act and [her] engagement in protected activity." *Id.*

Construing the SAC and Plaintiff's filings in opposition to Defendants' MTD liberally, Plaintiff appears to allege two retaliatory acts: first, that Defendants terminated her in retaliation for her voicing her religious opposition to the Vaccine, (SAC, Dkt. 29, ¶¶ 26, 37); and second, that Defendants "shar[ed] Plaintiff's private information and health records" with the EEOC in retaliation for her EEOC charge, (*id.* ¶ 46; Pl.'s MTD Resp., Dkt. 34, at 12). Regarding Plaintiff's termination, the SAC fails to allege that she opposed the Vaccine as a discriminatory practice or that she was terminated for alleging any such discrimination, and therefore fails to plead a protected activity. *See Hayes v. Rockaway Ctr., LLC*, No. 22-CV-6613 (DG) (ARL), 2024 WL 5715910, at *6 (E.D.N.Y. July 26, 2024) (plaintiff alleging retaliation under ADA "did not object to the policy . . . because it was discriminatory, and therefore, [her objection is] not protected activity."). Rather, as discussed *supra*, the SAC itself makes clear that Plaintiff was terminated because she refused to comply with a generally-applicable employment requirement—one she objected to because of her religious beliefs, not because she considered the requirement to be inherently discriminatory. This is insufficient to state a claim for Title VII retaliation. *See, e.g.*, *Grimes v. New York & Presbyterian Hosp.*, No. 23-CV-652 (MKV), 2024 WL 816208, at *10 (S.D.N.Y. Feb. 26, 2024) (dismissing Title VII retaliation claim where terminated plaintiff "was

expressly warned—along with all other [healthcare provider] employees—that noncompliance with the [] Mandate would result in these precise consequences," i.e., termination); *Adams v. New York State Unified Ct. Sys.*, No. 22-CV-9739 (JMF), 2023 WL 5003593, at *4 (S.D.N.Y. Aug. 4, 2023) (dismissing Title VII retaliation claim because "even if [plaintiff] had not [engaged in a protected activity], she still would have been terminated based on her failure to get vaccinated").

Regarding Plaintiff's EEOC-based retaliation claim, while her underlying EEOC charge is a protected activity under Title VII, Defendants' provision of Plaintiff's personnel files cannot be an "adverse employment action" because it is required by the EEOC process. *See What You Can Expect After a Charge is Filed*, EEOC, https://www.eeoc.gov/employers/what-you-can-expect-after-charge-filed (last visited Aug. 24, 2025).[9]  The Court cannot find a statutory violation in Defendants' compliance with required submissions to the EEOC triggered by an investigation that Plaintiff herself started.

Accordingly, any retaliation claim under Title VII fails.

*     *     *

Thus, the Court dismisses Plaintiff's Title VII claims in their entirety.

## II.    RFRA

Plaintiff next alleges that "Defendants substantially burdened Plaintiff's religious exercise, violating 42 U.S.C. § 2000bb-l, causing mental pain and anguish."  (SAC, Dkt. 29, ¶ 47; *see also*

---

[9] Again, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes." *Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)); *see also Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023) (recognizing that, at the motion to dismiss stage, a court may consider "matters of which judicial notice may be taken" (citation omitted)).

Pl.'s MTD Resp., Dkt. 34, at 10.)    RFRA prohibits the government from "substantially burden[ing]" a person's exercise of religion unless this burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(a)–(b).  To state a RFRA claim, a plaintiff must show, among other elements, that a government policy implicated her religious exercise.  *Azzarmi v. Donnelly*, No. 21-CV-0012 (WFK) (LB), 2021 WL 405491, at *4 (E.D.N.Y. Jan. 20, 2021).  "RFRA 'imposes restrictions on only the [federal] government and not private actors[.]'"  *Azzarmi v. Neubauer*, No. 20-CV-9155 (KMK), 2024 WL 4275589, at *17 (S.D.N.Y. Sep. 24, 2024) (quoting *Parks v. Montefiore Med. Ctr.*, No. 23-CV-4945 (JPO), 2024 WL 917330, at *4 (S.D.N.Y. Mar. 4, 2024)), *recon. denied sub nom. Azzarmi v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 20-CV-9155 (KMK), 2025 WL 35003 (S.D.N.Y. Jan. 6, 2025); *see Tanvir v. Tanzin*, 120 F.4th 1049, 1059 (2d Cir. 2024) ("RFRA's 'substantial burden' test 'requires an objective inquiry into the extent of the *governmental* pressure on the plaintiff's exercise of religion.'" (quoting *Kravitz v. Purcell*, 87 F.4th 111, 126 (2d Cir. 2023)) (emphasis added)).  Merely receiving government funding does not make a non-government entity subject to RFRA.  *See Holden v. E. Hampton Town*, No. 15-CV-4478, 2017 WL 1317825, at *5 (E.D.N.Y. Mar. 31, 2017) ("[T]he Supreme Court 'has repeatedly held that a private entity's dependence on government funding does not make the organization a state actor.'" (quoting *Archer v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 30 F. Supp. 2d 600, 605 (E.D.N.Y. 1998)); *see Wiltz v. New York Univ.*, No. 19-CV-3406 (GHW) (SDA), 2019 WL 8437456, at *7 (S.D.N.Y. Dec. 23, 2019) (noting, in ADA context, that "[i]t is well settled that private universities and private hospitals are not public entities subject to Title II, even if they receive government funding." (collecting cases)), *R&R*

*adopted*, 2020 WL 614658 (S.D.N.Y. Feb. 10, 2020).  Because Defendants are a private entity, regardless of any government funding they receive,[10] Plaintiff's RFRA claim fails.

## III.     Discrimination under the ADA and the NYCHRL

Third, Plaintiff alleges that "Defendants discriminated against [her] based on [her] actual or perceived disability (vaccination status), violating 42 U.S.C. § 12112 and N.Y.C. Admin. Code § 8-107(1)(a)."  (SAC, Dkt. 29, ¶ 48.)  While Plaintiff's SAC notes *only* her vaccination status as her disability, (*see id.*), Plaintiff later supplements this claim with a reference to "a physical or cerebral impairment recognized by the ADA," (Pl.'s MTD Resp., Dkt. 34, at 7), and repeated references to having received leave under the Family and Medical Leave Act ("FMLA"), ostensibly for a disability, (*see generally* Pl.'s MTD Sur-reply, Dkt. 44; FMLA Approval, Dkt. 34-3).

### A.     ADA Claim

The ADA prohibits an employer from discriminating against a qualified employee on the basis of disability.  42 U.S.C. § 12112(a).  To establish discrimination under the ADA, a plaintiff must show that: "(1) the employer is subject to the ADA, (2) the employee is disabled or is perceived to be disabled as defined by the ADA, (3) the employee is qualified to perform the essential functions of the job, with or without reasonable accommodations, and (4) the employee suffers an adverse employment action because of [her] disability." *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024) (citing *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231,

---

[10] Plaintiff's sole support for RFRA's applicability to Defendants is their receipt of government funding.  (Pl.'s MTD Sur-reply, Dkt. 44, at 19 ("Plaintiff contends that [Defendants], as a government-affiliated entity receiving public funding, must adhere to the same standards as the government because [Defendants] chose to rigidly enforce a government mandate while ignoring employee governance directives.  Therefore, their denial of the religious exemption, which burdens religious freedom, is subject to RFRA.").)

235 (2d Cir. 2015)).  A disability is a "physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).  The ADA also protects employees who have a "record of such an impairment" or are "regarded as having such an impairment."  42 U.S.C. § 12102(1)(A)–(C).

Plaintiff has failed to adequately allege a claim under the ADA.  To the extent her ADA claim is premised on her vaccination status, (*see* SAC, Dkt. 29, ¶ 48), neither vaccination status nor COVID-19 infection status qualify as disabilities under the ADA.  *Niles v. N.Y.C. Hum. Res. Admin.*, No. 22-CV-6307 (AMD) (JAM), 2024 WL 496346, at *10 (E.D.N.Y. Feb. 8, 2024); *see Johnson v. Maximus Servs., LLC*, No. 22-CV-2935 (AMD) (JRC), 2023 WL 5612826, at *4 (E.D.N.Y. Aug. 30, 2023) ("The decision to vaccinate or not to vaccinate is a personal choice [whereas] a disability is not something a person chose." (citation omitted)); *Sharikov*, 103 F.4th at 169 (finding that employee who was discharged for refusing to comply with company-wide vaccine mandate was not protected by ADA on the basis of his unvaccinated status); *Apuzza v. NYU Langone Long Island*, No. 22-CV-7519 (NJC) (JMW), 2023 WL 9022790 (E.D.N.Y. Dec. 29, 2023) (noting that a COVID-19 infection "is not a disability under the ADA"), *aff'd*, No. 24-CV-0493, 2025 WL 763425 (2d Cir. Mar. 11, 2025) (summary order).  Plaintiff therefore cannot allege an ADA claim based on her vaccination status.

To the extent Plaintiff's ADA claim is premised on her undefined "physical or cerebral impairment recognized by the ADA," (Pl.'s MTD Resp., Dkt. 34, at 7), it also must fail.  Plaintiff's "vague, conclusory assertions without details on how her condition actually affects a major life activity are insufficient" to state an ADA claim.  *Cain v. Mandl Coll. of Allied Health*, No. 14-CV-1729 (ER), 2017 WL 2709743, at *4 (S.D.N.Y. June 22, 2017); *see Dominguez v. Bd. of Educ. of Yonkers City Sch. Dist.*, No. 23-CV-2460 (NSR), 2025 WL 1285862, at *3 (S.D.N.Y.

May 2, 2025) (dismissing ADA allegations as insufficient despite detail regarding disability impact on "working in person, grocery shopping, or attending in person appointments").  To state a claim, Plaintiff must do more than "merely track the language of the statute," *Cain*, 2017 WL 2709743, at *4; she must provide the Court with sufficient detail about the *nature* of her disability and its *impact* on her major life activities such that the Court can determine whether the SAC can support a disability-based discrimination claim.  *See O'Hara v. Bd. Of Coop. Educ. Servs., S. Westchester*, No. 18-CV-8502 (KMK), 2020 WL 1244474, at *12 (S.D.N.Y. Mar. 16, 2020) (assessment of substantial limitations on a major life activity must take into account "the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long-term impact" (citation omitted)).  Plaintiff's exhibit regarding her FMLA leave also does not get her over even the minimal pleading bar, as it provides no information other than the fact that she was granted a period of medical leave.  (FMLA Approval, Dkt. 34-3.)  Indeed, Plaintiff could have been granted leave to take care of a family member.  And, even if Plaintiff's allegations were sufficient to establish a non-vaccine disability under the ADA, Plaintiff has failed to link that disability to her termination, which she has otherwise insisted was due to her vaccination status.

Thus, Plaintiff's ADA claim fails and must be dismissed.

**B.    NYCHRL**

Plaintiff also brings her claim for disability discrimination under the NYCHRL, which bars employers from discharging from employment or discriminating against an individual because of their disability, among other protected categories.  N.Y.C. Admin. Code § 8-107(1)(a).  Plaintiff pleads her NYCHRL claim coterminously with her ADA claim, (SAC, Dkt. 29, ¶ 48), and

separately in relation to NYCHRL's unique protections for COVID-19 *infection* status, (*see* Pl.'s MTD Resp., Dkt. 34, at 8.)

Having dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the NYCHRL claim.  *See* 28 U.S.C. § 1367(c)(3) (a court "may decline to exercise supplemental jurisdiction over" state law claims on various grounds, including that "the district court has dismissed all claims over which it has original jurisdiction," such as federal claims); *Lanza v. Merrill Lynch & Co.*, 154 F.3d 56, 61 (2d Cir. 1998) (explaining that state law claims should generally be dismissed when all federal claims are dismissed).  Even if the Court retained jurisdiction over her NYCHRL claim, the state law appears to protect COVID-19 *infection* status, rather than *vaccination* status.  (*See* Dkt. 34-2 (screenshot of NYC Commission on Human Rights' "COVID-19 & Employment Protections" website stating, "Commission considers *actual or perceived infection* with COVID-19 to be protected as a disability under the [NYCHRL]" (emphasis added)).)  Plaintiff has made no allegations regarding a COVID-19 *infection*.

Plaintiff's NYCHRL claim is therefore dismissed.

## IV.    Conspiracy under 42 U.S.C. § 1985(3)

Fourth, Plaintiff alleges that "Defendants conspired to deprive Plaintiff of equal opportunities, protection, and procedural rights through pretextual termination causing mental pain and anguish, leading to physiological harm" in violation of 42 U.S.C. § 1985(3) ("Section 1985"). (SAC, Dkt. 29, ¶ 51.)[11]  To state a conspiracy claim under Section 1985, a plaintiff must allege "1)

---

[11] Plaintiff also claims that Defendants are liable for obstruction of justice in violation of 18 U.S.C. § 1503.  (SAC, Dkt. 29, ¶ 57.)  However, that statute refers to attempts to "influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate," and is therefore inapposite.  18 U.S.C.

a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006)) (internal quotation marks omitted); *see* 42 U.S.C. § 1985(3). "The conspiracy must also be 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.'" *Id.* (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)). "Mere conclusory or general allegations of a conspiracy are insufficient to state a claim" under Section 1985. *Artemov v. City of New York*, No. 24-CV-1908 (PKC) (LB), 2024 WL 1436024, at *3 (E.D.N.Y. Apr. 3, 2024) (citing *Doe v. Fenchel*, 837 F. App'x 67, 68–69 (2d Cir. 2021) (summary order) (affirming dismissal of plaintiff's Section 1985 conspiracy claim where the operative complaint did not include facts to support its conclusory allegations)).

Here too, Plaintiff fails to state a claim upon which the Court can grant relief. Preliminarily, a conspiracy requires "two or more persons." *Jianjun Li v. Vill. of Saddle Rock*, No. 20-CV-2289 (DRH) (ST), 2021 WL 1193618, at *10 (E.D.N.Y. Mar. 30, 2021) (citing 42 U.S.C. § 1985(3)). Plaintiff appears to suggest that the EEOC is Defendants' co-conspirator. (*See* SAC, Dkt. 29, ¶¶ 54–55 (discussing EEOC "chang[ing] their mind" and "strategically ignoring" Plaintiff).) But "the United States has not waived sovereign immunity for claims against the EEOC . . . brought pursuant to [Section 1985]." *Haynes v. Quality Markets*, 307 F. App'x 473, 475 (2d Cir. 2008) (citation omitted). Even if Plaintiff's claim were not barred by sovereign

---

§ 1503(a). Furthermore, as a criminal statute, it cannot be enforced by Plaintiff. *See Felton v. Loc. Union 804, Int'l Bhd. of Teamsters*, No. 17-CV-2309 (AMD) (RML), 2017 WL 11724422, at *4 (E.D.N.Y. Apr. 26, 2017).

immunity, Plaintiff's mere conclusory allegations regarding what she perceives to be Defendants and the EEOC's "conspirative intent" during a singular event, (Pl.'s MTD Resp., Dkt. 34, at 11; *see* SAC, Dkt. 29, ¶¶ 53–54), do not rise to the level of "conspiracy" required by Section 1985, *see, e.g.*, *Srubar v. Rudd, Rosenberg, Mitofsky & Hollender*, 875 F. Supp. 155, 162 (S.D.N.Y. 1994) (dismissing Section 1985 claim where the complaint failed to state facts to establish the existence of an invidious motivation or to plead with particularity the existence of a conspiracy).

Plaintiff's Section 1985 claim is therefore dismissed.

## V.    Remaining State Law Claims

Finally, Plaintiff alleges various claims under New York state law, namely: civil rights violations under the NYSHRL[12]; "coercion injury under New York Penal Law § [135.61];" "privacy invasion[13] and tort violations;" "bad faith;" and "negligence." (SAC, Dkt. 29, at ¶¶ 49–50, 59–67.) Having dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over these remaining state law claims, which it dismisses.

## VI.    Denial of Leave to Amend

The Second Circuit has held that leave to replead should be liberally granted to *pro se* litigants. *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("[A] *pro se*

---

[12] Plaintiff relies on the NYSHRL for "mental pain and suffering" damages resulting from the alleged civil rights violations stemming from the alleged Section 1985 conspiracy. (SAC, Dkt. 29, ¶ 58.) Having found that Plaintiff has failed to adequately plead a Section 1985 violation, the Court declines to analyze any potential damages under NYSHRL.

[13] Plaintiff alleges this cause of action under New York Civil Rights Law § 50, which provides that "[a] person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait, picture, likeness, or voice of any living person without having first obtained the written consent of such person . . . is guilty of a misdemeanor." N.Y. Civ. Rights Law § 50 (McKinney). The Court finds the statute inapposite based on Plaintiff's pleadings.

complaint generally should not be dismissed without granting the plaintiff leave to amend at least once[.]").  "[B]ut amendment should be denied where the complaint gives no 'indication that a valid claim might be stated.'"  *McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355, at *3 (2d Cir. Sep. 15, 2022) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).  The Court has granted Plaintiff leave to amend once before.  (*See* M&O Dismissing Am. Compl., Dkt. 23, at 8.) This is Plaintiff's second amended complaint, and the additional detail included in the SAC does not change the reality that Plaintiff's core claims fail as a matter of law.  Therefore, the Court finds that amendment would be futile and denies leave to amend.

## CONCLUSION

Accordingly, the Court grants Defendants' MTD and dismisses Plaintiff's federal claims, i.e., her Title VII, RFRA, ADA, and Section 1985 claims, with prejudice for failure to state a claim upon which relief may be granted; and dismisses her state law claims, including her NYCHRL claim, without prejudice to renew in state court.  The Court also denies as unnecessary Plaintiff's request for oral argument on her SAC.  (*See* Dkt. 33.)  The Clerk of Court is respectfully directed to enter judgment and close this case.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore IFP status is denied for the purpose of any appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated:  September 26, 2025
        Brooklyn, New York