UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SIMONE BARTHOLOMEW,

Plaintiff,

- against -

MOUNT SINAI WEST and MOUNT SINAI HEALTH SYSTEM,

Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-3854 (PKC) (JRC)

PAMELA K. CHEN, United States District Judge:

On September 26, 2025, the Court issued a Memorandum and Order ("M&O") granting Defendants Mount Sinai West and Mount Sinai Health System's Motion to Dismiss ("MTD") Plaintiff's Second Amended Complaint ("SAC") for failure to state a claim. (M&O, Dkt. 47.) Before the Court is Plaintiff's motion for reconsideration, which was filed on October 28, 2025. (Pl.'s Mot. Recons. ("Recon. Mot."), Dkt. 49.) For the reasons that follow, the Court denies Plaintiff's Motion for Reconsideration.

**STANDARD FOR RECONSIDERATION**

A motion for reconsideration is the proper vehicle for bringing to the Court's attention matters it may have overlooked in its initial ruling or order. *See* Loc. Civ. R. 6.3. "The standard for granting [a reconsideration motion] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted); *accord Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citing *Shrader*,

70 F.3d at 257); *see also* Loc. Civ. R. 6.3 (requiring the moving party to "set[] forth concisely the matters or controlling decisions which the moving party believes the court has overlooked").

At the same time, "[r]econsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Hidalgo v. New York*, No. 11-CV-5074 (JS) (GRB), 2012 WL 3598878, at *1 (E.D.N.Y. Aug. 20, 2012) (quoting *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)). For that reason, a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (internal quotation marks omitted) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)); *see also Premium Sports Inc. v. Connell*, No. 10-CV-3753 (KBF), 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) ("A motion for reconsideration should not be used as a vehicle simply to voice disagreement with the Court's decision." (citation omitted)). Rather, reconsideration is typically reserved for where there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."[1] *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted).

---

[1] In the context of a motion for reconsideration, manifest injustice "is defined as an error committed by the trial court that is direct, obvious, and observable." *Petersen Energia Inversora, S.A.U. v. Argentine Republic*, No. 15-CV-2739 (LAP), 2023 WL 3625784, at *1 (S.D.N.Y. May 24, 2023) (first quoting *Corpac v. Rubin & Rothman, LLC*, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2013); and then citing *Westcon Grp., Inc. v. CCC Techs., Inc.*, No. 19-CV-2303 (PMH), 2023 WL 2058709, at *2 (S.D.N.Y. Feb. 16, 2023)).

## DISCUSSION

In her motion for reconsideration, Plaintiff identifies eight purported errors in the Court's dismissal of her claims. None of the issues she presents constitute errors and none justify altering the Court's judgment dismissing her claims.[2]

### I. Plaintiff's Accommodation Request

Plaintiff asserts that, in finding Plaintiff's accommodation claim deficient, the Court erroneously concluded that she "expected the employer to create a position for her and [that she] did not ask for a viable accommodation." (Recon. Mot., Dkt. 49, at 3–4 (citing M&O, Dkt. 47, at 8–10).) However, Plaintiff mischaracterizes the basis for the Court's decision; the Court did not find that Plaintiff was seeking to have Defendants create a new position for her. Rather, in dismissing Plaintiff's reasonable accommodation claim, the Court understood that Plaintiff's argument then (and now) is that her requested accommodation was "to continue performing her regular, required duties by working from home doing the same tasks she had been performing when placed in a private office setting during the mandate." (*Id.* (citing SAC, Dkt. 29, ¶ 23).) Plaintiff claims this was a "request for a reasonable modification to the existing work environment—doing from home what she was already doing in a private office—which would have effectively removed her from the definition of personnel while the mandate was ongoing." (*Id.* at 4.) But, as the Court explained in the M&O, "Title VII does not require covered entities to provide the accommodation that [p]laintiffs prefer." (M&O, Dkt. 47, at 9 (quoting *Smith v. NYS OMH S. Beach Psychiatric Ctr.*, No. 23-CV-4401 (PKC) (LB), 2024 WL 730492, at *3 (E.D.N.Y. Feb. 22, 2024).) Here, Plaintiff's job responsibilities included *in-person* activities. (*See, e.g.*,

[2] The Court presumes the parties' familiarity with the facts and procedural history of this case, which are set forth in detail in the Court's Memorandum & Order, (*s*ee M&O, Dkt. 47, at 2–4).

MTD, Dkt. 36, at 2 (Plaintiff's duties included, *inter alia*, "provid[ing] patients with metro cards when applicable, and monitor[ing] patient flow in waiting rooms")). Therefore, in order to accommodate Plaintiff's request to work from home, Defendants would have had to reassign some of her in-person responsibilities to others, which is not an accommodation Defendants were required to provide. *See Clark v. Coca-Cola Beverages Ne., Inc.*, No. 20-CV-4040, 2022 WL 92060, at *2–3 (2d Cir. Jan. 10, 2022) (summary order) (in ADA context, employer was not required to reallocate tasks from an employee to other team members because these are not considered reasonable accommodations).

## II. Plaintiff's ADA Discrimination Claim

Plaintiff claims that in dismissing her ADA discrimination claim, the Court erred by discounting Plaintiff's Family and Medical Leave Act ("FMLA") documentation on the basis that it provided "no information other than the fact she was granted a period of medical leave" and that Plaintiff "could have been granted leave to take care of a family member." (Recon. Mot., Dkt. 49 at 4 (quoting M&O, Dkt. 47, at 17).) Plaintiff claims this was erroneous because in her opposition to Defendants' motion to dismiss, she specified that the FMLA leave was granted for "1 day for appointment and 4 days for flare up of [her] medical condition," (*id.* at 4 (citing FMLA Approval Notice, Dkt. 34-3)), which links the FMLA leave to Plaintiff's "own documented medical needs, not [those of] a family member," (*id.*). But the FMLA Approval Notice exhibit that Plaintiff cites is a form letter from Mount Sinai that informs her of the FMLA leave she was granted and includes what appears to be standard form language specifying how much additional leave would be permitted for "flare-ups" and "appointments." (FMLA Approval Notice, Dkt. 34-3.) It does nothing to provide any necessary details of what Plaintiff's medical needs were and does not establish that the medical needs for which FMLA leave was granted were her own medical needs,

as opposed to those of family members. The Court therefore did not overlook anything with respect to this exhibit.

Plaintiff also argues that "the law further states personal medical information is not necessary at the pleading stage." (Recon. Mot., Dkt. 49, at 4 (citing Pl.'s MTD Sur-Reply, Dkt. 44, at 14).) This is legally incorrect. (*See* M&O, Dkt. 47, at 16–17 (collecting cases holding that, *inter alia*, plaintiffs must allege more than vague or conclusory assertions as to their disabilities and how they affect their lives in making an ADA discrimination claim)).

**III. Plaintiff's Disability Discrimination Claim**

Plaintiff claims that the Court erred by finding that Plaintiff "relies solely on the New York State Human Rights Law (NYSRHL) or vaccination status as the basis for [her] disability discrimination claim." (Recon. Mot., Dkt. 49 at 4–5 (citing M&O, Dkt. 47, at 15–18).) Plaintiff claims this was erroneous because her SAC "asserts discrimination based on '[Plaintiff's] actual or perceived disability (vaccination status),' where 'vaccination status' is presented as a manifestation or proxy for the underlying disability, not the sole legal basis," and that "[c]oupled with the documented FMLA for [Plaintiff's] medical condition, the record establishes Plaintiff also pled discrimination based on an actual disability and a record of that disability." (*Id.* (emphasis omitted) (first quoting SAC, Dkt. 29, ¶ 48; and then citing Mem. Supp. Pl.'s Resp. MTD ("Pl.'s MTD Opp'n"), Dkt. 34, at 7).) Plaintiff again mischaracterizes the Court's decision.

The Court explicitly did *not* rely solely on Plaintiff's vaccination status as the basis for her disability claims and did analyze whether Plaintiff had stated an ADA claim "premised on her undefined 'physical or cerebral impairment recognized by the ADA.'" (M&O, Dkt. 47, at 16 (quoting Pl.'s MTD Opp'n, Dkt. 34, at 7).) In so doing, the Court correctly held that Plaintiff's allegations related to this claim were vague and conclusory. (*See id.* at 16–17.) More importantly, the Court found that even if Plaintiff had or could allege her disability in a non-conclusory fashion,

"Plaintiff ha[d] failed to link that disability to her termination, which she ha[d] otherwise insisted was due to her vaccination status." (*Id.*) Thus, even if Plaintiff was correct that the Court overlooked the vaguely alleged non-vaccination disability, which it did not, that disability never could have formed the basis for her discrimination claim.

**IV. The Court's Taking of Judicial Notice of Facts in the Public Record**

Plaintiff takes issue with the Court's taking judicial notice of facts in the public record regarding "COVID data, executive orders, and regulations." (Recon. Mot., Dkt. 49, at 5 (citing M&O, Dkt. 47, at 3 n.5).) Specifically, Plaintiff claims that she objected in the course of opposing dismissal, (*see id.* (citing Dkt. 31 (Plaintiff's brief in opposition to Defendants' request for pre-motion conference))), to Defendants' reliance on these facts in the public record, but that the Court erroneously found that "Plaintiff never objected." (*See id.* (quoting M&O, Dkt. 47, at 3 n.5).) Plaintiff cites no specific place in the record where she ever made such an objection to judicial notice of certain facts and the Court's review of the brief she cited confirms that she never made such an objection. Furthermore, even if Plaintiff had objected, she fails to point to any error in the Court's having taken judicial notice of facts such as the New York Department of Health's adoption of an emergency rule in August 2021 that certain medical professionals be vaccinated against COVID-19. (*See* M&O, Dkt. 47, at 3 & n.5.)

**V. Plaintiff's Religious Discrimination Claim and Lack of Oral Argument**

Plaintiff claims that the Court erred by liberally construing Plaintiff's religious discrimination claim, which Plaintiff concedes was "scattered" and not cohesively pled in her SAC. (Recon. Mot., Dkt. 49, at 5–6.) Specifically, Plaintiff takes issue with the Court's comment that the claim was not "explicitly alleged" and that the Court denied Plaintiff's request for oral argument, which would have allowed Plaintiff to explain her religious discrimination claim. (*Id.* (quoting M&O, Dkt. 47, at 10).) As the Court made clear in its Memorandum & Order, it

thoroughly analyzed the viability of a Title VII religious discrimination claim even though it was not clearly or cohesively pled. (*See* M&O, Dkt. 47, at 10–11.) Given the Court's liberal construction and consideration of this claim in spite of Plaintiff's deficient pleadings, there can be no error based on the Court's failure to piece together Plaintiff's scattered claim. Furthermore, even now, Plaintiff neither claims nor explains how the Court's liberal construction of her religious discrimination claim was erroneous.

The Court likewise did not err by not granting Plaintiff's request for oral argument. *See Udoh v. New York City Dep't of Prob.*, No. 24-CV-3982 (ER), 2026 WL 710040, at *3 (S.D.N.Y. Mar. 13, 2026) ("[T]he Second Circuit has made it clear that '[c]ourts have broad discretion to determine how much, if any, oral argument is appropriate in a given case.'" (quoting *Dr.'s Assocs., Inc. v. Distajo*, 66 F.3d 438, 448 (2d Cir. 1995))).

**VI. Plaintiff's Privacy Claim**

Plaintiff claims the Court erred by dismissing her privacy claim based on what Plaintiff argues was a "flawed legal premise that [she] automatically waived all privacy rights in her employee file simply by initiating a complaint" with the Equal Employment Opportunity Commission ("EEOC"). (Recon. Mot., Dkt. 49, at 6 (citing M&O, Dkt. 47, at 13).) Plaintiff argues that the Court should have applied the "need to know" standard, and that "the mere act of filing a complaint does not entitle the Defendant to disseminate all personal medical or employee information without regard to necessity." (*Id.*) Plaintiff's argument is without merit. As the Court explained in dismissing her privacy claim, "Defendants' provision of Plaintiff's personnel files [to the EEOC] cannot be an 'adverse employment action' because it is required by the EEOC process." (M&O, Dkt. 47, at 13 (citing *See What You Can Expect After a Charge is Filed*, EEOC, https://www.eeoc.gov/employers/what-you-can-expect-after-charge-filed [https://perma.cc/A6AL-N4HK] (last visited Sep. 3, 2026))).

## VII. Plaintiff's Retaliation Claims

The Court dismissed Plaintiff's retaliation claims in part because Plaintiff was "terminated because she refused to comply with a generally-applicable employment requirement—one she objected to because of her religious beliefs, not because she considered the requirement to be inherently discriminatory." (M&O, Dkt. 47, at 12.) Plaintiff argues that this was erroneous because "the decision to terminate was 'not only discriminatory, but pretextual,'" and so the Court took too "narrow" of an "interpretation" of the allegations and legal theories. (Recon. Mot., Dkt. 49, at 8 (quoting Pl.'s MTD Opp'n, Dkt. 34, at 4).) According to Plaintiff, "[b]y pleading that the termination was discriminatory, [she] asserted that the policy, *as applied* to her, was discriminatory." (*Id.*) Plaintiff's argument misconstrues the Court's holding. As the Court cited in dismissing Plaintiff's claims, many courts have recognized that Title VII retaliation claims should be dismissed where, "even if [a plaintiff] had not [engaged in a protected activity, they] still would have been terminated based on [the] failure to get vaccinated,"[3] or where plaintiffs were "expressly warned—along with all other [healthcare provider] employees—that noncompliance with the [] Mandate would result in these precise consequences," *i.e.*, termination.[4] The Court did not err by finding that Plaintiff's retaliation claim was similarly fundamentally flawed and failed to sufficiently allege that the generally-applicable vaccination requirement—rather than her termination—was discriminatory.

---

[3] *Adams v. New York State Unified Ct. Sys.*, No. 22-CV-9739 (JMF), 2023 WL 5003593, at *4 (S.D.N.Y. Aug. 4, 2023).

[4] *Grimes v. New York & Presbyterian Hosp.*, No. 23-CV-652 (MKV), 2024 WL 816208, at *10 (S.D.N.Y. Feb. 26, 2024).

## VIII. Court's Denial of Leave to Amend a Third Time

Plaintiff claims the Court erred by dismissing her SAC without granting leave to amend and by denying *in forma pauperis* status for any appeal. (*Id.* at 7–8 (citing M&O, Dkt. 47, at 21).) Plaintiff argues the futility finding was "premature," (*id.* at 7), but even now she identifies no facts or amendments she could have raised that would not have been futile. The Court's denial of leave to amend was not without reason. As the Court explained, it had previously dismissed Plaintiff's claims in their entirety but with leave to amend—which Plaintiff ultimately did—and that there was no reason to believe a further opportunity to amend was going to cure the fundamental deficits in the core of Plaintiff's claims. (*See* M&O, Dkt. 47, at 21 (citing Mem. & Order Dismissing Am. Compl., Dkt. 23, at 8).)

## CONCLUSION

Accordingly, Plaintiff's Motion for Reconsideration and to Alter or Amend Judgment is denied. This case remains closed. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 9, 2026
Brooklyn, New York